UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL J. BANKS and ANTONIA RUSH-BANKS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:13CV02158 ERW |
| FRANCIS G. SLAY, et al., | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants Slay, Green and Jones' Motion to Dismiss [ECF No. 13] and Defendants[ Slay, Gray, Irwin, Turner, and Switzer's] Motion to Dismiss [ECF No. 18]. On March 6, 2014, the Court held a Hearing, and the parties addressed these pending motions.

I. BACKGROUND

This case arises out of the alleged violation of Plaintiff Michael Banks' Fourth Amendment rights under the United States Constitution. Specifically, Plaintiffs Michael Banks and Antonia Rush-Banks contend Reginald Williams, a police officer for the St. Louis Metropolitan Police Department (SLMPD), unlawfully searched and seized Plaintiff Michael Banks in 2002, leading to criminal charges and subsequent acquittal by a jury. In 2005, Plaintiffs filed a state suit, *Banks I*, against Williams, the SLMPD Board of Commissioners (Board), and Ryan Cousins, another SLMPD officer. In 2008, Plaintiffs dismissed, without prejudice, the claims against the Board, and in 2009, they dismissed, with prejudice, the claims against Cousins. Plaintiffs then filed a Second Amended Petition against Williams in his

1

personal and official capacities. The Petition asserted a claim under 42 U.S.C. § 1983 for unconstitutional search and seizure, and common law claims of malicious prosecution, conversion, and loss of consortium. Williams failed to file an answer, and on April 27, 2009, the trial court entered a default judgment against him.

On April 6, 2012, Plaintiffs filed another state court suit, *Banks II*, against: Francis Slay, in his capacities as Mayor of the City of St. Louis (City) and *ex-officio* member of the Board; Darlene Green, City Comptroller; then-City Treasurer Larry C. Williams, who has subsequently been substituted by his successor, Tishaura Jones; and Board member Bettye Battle-Turner. In *Banks II*, Plaintiffs sought a writ of mandamus directing these officials to satisfy the default judgment entered against Williams in *Banks I*. The circuit court erroneously issued a summons, rather than a preliminary writ as required by Missouri Supreme Court Rule 94.04.[1]

The *Banks II* defendants moved to dismiss for failure to state a claim on which relief may be granted, and the trial court granted their motion on November 5, 2012. Plaintiffs filed a motion for leave to amend their Petition, and the trial court denied the motion on November 29, 2012.

Plaintiffs appealed the *Banks II* order of dismissal to the Missouri Court of Appeals, Eastern District, arguing the trial court erred by concluding the underlying default judgment

---

[1] In Missouri, the normal procedure for writs of mandamus begins with a petition for the writ in the circuit court. *Dept' of Veterans Affairs v. Boresi*, 396 S.W.3d 356, 364 (Mo. 2013) (en banc) (Fischer, J., concurring). Then, the circuit court examines the petition and determines whether a preliminary order of mandamus should issue. *Id.* If the circuit court denies the preliminary writ, the petitioner can re-file the writ in the next highest court. *Id.* If the circuit court, however, "is of the opinion that the preliminary order of mandamus should be granted, such order shall be issued." *Id.*; Missouri Supreme Court Rule 94.04. "The preliminary order in mandamus directs the respondent to file an answer within a specified amount of time, and it also may order the respondent to refrain from all or some action." *Boresi*, 396 S.W.3d at 364 (Fischer, J., concurring). From there, the court may grant or deny the petition for writ of mandamus, and any final decision is "reviewable by appeal," rather than by filing an original writ in the next highest court. *Id.*

against Williams was not a direct judgment against the City or the Board. On October 8, 2013, the Court of Appeals issued an opinion, holding it could not "conclude . . . that any legal authority exists to require the City or the Board to pay the default judgment entered solely against Officer Williams." *Banks v. Slay*, 410 S.W.3d 767, 771 (Mo. App. E.D. 2013). In so holding, the Court of Appeals discussed *Brandon v. Holt*, which "explicit[ly]" stated "that a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond." 469 U.S. 464, 471-72 (1985). The Court of Appeals distinguished *Brandon*, and stated it "c[ould] not conclude the City or the Board had the opportunity to be heard with respect to the default judgment against Officer Williams." *Banks*, 410 S.W.3d at 771. The court took note of the circuit court's procedural error, and concluded, "Rather than perpetuate a procedural process that is not authorized by Rule 94 and is disfavored by the Supreme Court of Missouri, instead of stating that the judgment is affirmed, this court denies the writ without prejudice to seeking an original writ in the Supreme Court of Missouri." *Id.*

Plaintiffs then filed the instant suit in this Court, naming as Defendants: (1) Francis Slay, in his official capacities as Mayor of the City and *ex-officio* member of the Board; (2) Darlene Green in her official capacity as Comptroller of the City; (3) Tishaura Jones, in her official capacity as Treasurer of the City; and (4) Richard Gray, Thomas Irwin, Bettye Battle-Turner, and Erwin Switzer, in their capacities as members of the Board. The Complaint seeks a writ of mandamus ordering Defendants to satisfy the *Banks I* default judgment, and a declaration that the judgment against Williams is tantamount to a direct judgment against Defendants.

## II. DISCUSSION

In their Motion, Defendants Slay, Green, and Jones assert this case should be dismissed for three reasons. First, they contend Plaintiffs' claims are barred by the common law doctrine of *res judicata*. Second, they argue, in light of the state court proceedings regarding this matter, the *Rooker-Feldman* doctrine divests this Court of subject matter jurisdiction. Finally, they maintain the instant lawsuit is barred by the five-year statute of limitations applicable to § 1983 claims brought in Missouri. Defendants Slay, Gray, Irwin, Turner, and Switzer argue only that the *Rooker-Feldman* doctrine applies, and the Court should, therefore, dismiss this case. For reasons discussed *infra*, the Court concludes it lacks subject matter jurisdiction due to the *Rooker-Feldman* doctrine.[2] Thus, the Court need not decide whether *res judicata* or the five-year statute of limitations applies.[3]

---

[2] Although the *Rooker-Feldman* doctrine precludes subject-matter jurisdiction in this case, a review of the state proceedings compels further commentary.

The allegations in the Second Amended Petition arise out of events that occurred in 2002. At that time, Missouri police departments were answerable to the State of Missouri, rather than cities. Mo. Rev. Stat. § 84.010 (repealed 2012); *Smith v. State*, 152 S.W.3d 275, 278 (Mo. 2005) (en banc); *contra* Mo. Rev. Stat. § 84.344 (enacted in 2012, authorizing establishment of municipal police forces in St. Louis). Therefore, although the SLMPD police officers were, and continue to be, officers of the State and the City, Mo. Rev. Stat. § 84.330, "this dual status d[id] not mean the City [wa]s a proper defendant in a § 1983 case challenging City police officers' conduct against an individual." *Ford v. St. Louis Metro. Towing, L.C.*, No. 4:09CV0512 TCM, 2010 WL 618491, at *17 (E.D. Mo. Feb. 18, 2010). In fact, at the time, the City was expressly prohibited from exercising authority or control over the Board or police departments. Mo. Rev. Stat. § 84.010 (repealed 2012). That said, the City could still be liable on a § 1983 claim if the City and the Board "acted together by custom to deprive the plaintiff of his constitutional rights." *Ford*, 2010 WL 618491, at *18 (quoting *Carroll v. Sisco*, No. 4:00CV00864, 2007 WL 209924, at *4 (E.D. Mo. May 30, 2007)).

In *Banks I*, Plaintiffs dismissed, with prejudice, their petition against Officer Cousins, and dismissed, without prejudice, their petition against the SLMPD Board. Plaintiffs then filed and served their Second Amended Petition on Officer Williams and members of the Board, including Mayor Slay as *ex-officio* member of the Board. *See* ECF No. 1-2. In other words, in *Banks I*, none of the City officials, now named as defendants, were served with process, except Mayor

Under the *Rooker-Feldman* doctrine, only the United States Supreme Court has jurisdiction to review decisions of state courts. *Friends of Lake View Sch. District v. Beebe*, 578 F.3d 753,758 (8th Cir. 2009); 28 U.S.C. § 1257. Therefore, federal district courts generally lack subject matter jurisdiction over attempted appeals from state courts. *Id.*; *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). Generally, the *Rooker-Feldman* doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It "does not bar federal claims brought in federal court when a state court previously presented with the same claims declined to reach their merits." *Simes v. Huckabee*, 354 F.3d 823, 830 (8th Cir. 2004).

Aside from "straightforward" appeals of state decisions, however, the *Rooker-Feldman* doctrine forecloses "more indirect attempts by federal plaintiffs to undermine state court

---

Slay – and then, only in his capacity as *ex-officio* member of the Board. ECF No. 1-2 at 5. In addition, while the Second Amended Petition alleges the Board deliberately failed to remedy continuing and pervasive patterns of unconstitutional conduct, ECF No. 1-4 at ¶¶ 19, 25, it makes no similar allegations regarding the City. In any event, it certainly fails to allege the City and Board "acted together by custom to deprive [Plaintiffs] of [their] constitutional rights." *Ford*, 2010 WL 618491, at *18 (quoting *Carroll*, 2007 WL 209924, at *4).

Therefore, like the Court of Appeals, this Court agrees the City lacked notice and an opportunity to respond, as required before imposition of entity liability. *See Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). In fact, even if the City had been properly notified of the purported claims against it, the Second Amended Petition fails to state a viable basis on which the City could be held liable. That is, the City, on its own, did not have policy-making authority over police departments in 2002, and the Second Amended Petition fails to allege the City acted with the Board to deprive Plaintiffs of their constitutional rights.

[3] Not all of the defendants named in *Banks II* were identical to the defendants now named. Despite these differences, no separate analysis is needed, because the new defendants are officials whose positions were represented by the defendants named in *Banks II*. *See Lemonds v. St. Louis County*, 222 F.3d 488, 495 (8th Cir. 2000) ("Insisting that the parties must be identical, it seems to us, confuses the *Rooker-Feldman* doctrine with principles of res judicata.").

decisions." *Lemonds v. St. Louis County*, 222 F.3d 488, 493 (8th Cir. 2000). "Thus, a corollary to the basic rule against reviewing judgments prohibits federal district courts from exercising jurisdiction over general constitutional claims that are 'inextricably intertwined' with specific claims already adjudicated in state court." *Id.* at 492-93; *Simes*, 354 F.3d at 827. A federal claim is inextricably intertwined with a state decision "if a federal claim would succeed only to the extent that the state court wrongly decided the issues before it." *Simes*, 354 F.3d at 827 (internal quotations omitted). "A state court need only indicate it has considered, reached the merits, and rejected the federal claims in order for [*Rooker-Feldman*] to apply." *Id.* at 830.

Plaintiffs make several arguments against application of the *Rooker-Feldman* doctrine. The Court addresses each, in turn.

### A. *The State Proceedings Were "Complete" at the Commencement of the Federal Case*

First, Plaintiffs argue the *Rooker-Feldman* doctrine applies only when the federal suit commences after the state proceedings have ended. They note, in *Banks II*, the Court of Appeals gave leave to file an original writ in the Supreme Court of Missouri. In light of this fact, Plaintiffs maintain the state court proceedings were not complete when they filed their federal Complaint, and the *Rooker-Feldman* doctrine does not apply.

Plaintiffs correctly observe the *Rooker-Feldman* doctrine applies only when the state court proceedings are "complete" at the time the federal suit commences. *Dornheim v. Sholes*, 430 F.3d 919, 923-24 (8th Cir. 2005); *Exxon Mobil Corp.*, 544 U.S. at 292-93. However, Plaintiffs erroneously contend the state court proceedings are incomplete. Such an outcome would do violence to the notion of "den[ying]" the writ with leave to seek an "original" writ in the Supreme Court of Missouri. *Banks*, 410 S.W.3d at 771. In other words, due, in part, to the unique nature of mandamus actions, and, in part, to the unusual procedural history of the instant

case, Plaintiffs would have to institute a new mandamus action should they decide to pursue this case at the state level. Accordingly, the Court finds the state proceedings were "complete" at the time the Court of Appeals denied the writ, which occurred before the commencement of the federal action.[4]

Nor is the Court persuaded by Plaintiffs' reference to *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602 (9th Cir. 2005).[5] In *Mothershed*, an attorney sought a writ of mandamus in the Oklahoma Supreme Court to halt state bar disciplinary proceedings against him. *Id.* at 604 n.1. The Ninth Circuit, in a footnote, found "state proceedings ended for *Rooker-Feldman* purposes when the Oklahoma Supreme Court denied Mothershed's request that it issue a writ of mandamus[.]" *Id.* Based on this language, Plaintiffs argue their underlying state proceedings cannot be complete until they file a new writ in the Supreme Court of Missouri, and that court subsequently denies the writ. The Court cannot agree. Nothing in *Mothershed* suggests, had the attorney ended his mandamus pursuit at a lower court,[6] *Rooker-Feldman* would not apply.

In any event, even assuming the state proceedings were incomplete at the time the federal case commenced, dismissal still would be proper, due to a concept raised by none of the parties: the *Younger* abstention doctrine.[7] The *Younger* doctrine "provides that federal courts should

---

[4] The Court of Appeals denied the writ of mandamus on October 8, 2013. *See Banks v. Slay*, 410 S.W.3d 767 (Mo. App. E.D. 2013). Plaintiffs filed their federal Complaint on October 28, 2013.

[5] The Eighth Circuit has favorably cited *Mothershed* on at least two occasions. *See Robins v. Ritchie*, 631 F.3d 919, 926 (8th Cir. 2011); *Dornheim v. Sholes*, 430 F.3d 919, 923 (8th Cir. 2005).

[6] The Court is unaware of Plaintiffs' reasoning for filing the instant action, instead of seeking an original writ in the Supreme Court of Missouri. Plaintiffs take the position they could file a writ in the Supreme Court of Missouri, or here, and elected to file here.

[7] This Court may raise *sua sponte* the issue of *Younger* abstention. *See Geier v. Mo. Ethics Comm'n*, 715 F.3d 674 (8th Cir. 2013) (affirming district court's *sua sponte* decision to abstain under *Younger v. Harris*, 401 U.S. 37 (1971)).

abstain from exercising jurisdiction when (1) there is an ongoing state proceeding, (2) which implicates important state interests, and (3) there is an adequate opportunity to raise any relevant federal questions in the state proceeding." *Plouffe v. Ligon*, 606 F.3d 890, 892 (8th Cir. 2010). Assuming the state proceedings were not "complete," and were therefore "ongoing," the Court finds this case "implicates important state interests." That is, the Complaint seeks to enforce the default judgment against Defendants, and "enforcing state court judgments cuts to the state's ability to operate its own judicial system, a vital interest for *Younger* purposes." *Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 352 (4th Cir. 2005); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12-13 (1987) ("States have important interests in administering certain aspects of their judicial systems."). Finally, the Court has no difficulty concluding the third element of the *Younger* doctrine is met here; the Court of Appeals' opinion indicates Plaintiffs had a meaningful opportunity to argue the City and Board were liable for the judgment against Williams. *See Banks v. Slay*, 410 S.W.3d 767 (Mo. App. E.D. 2013). In fact, Plaintiffs set forth these arguments at the circuit court, as well. Therefore, even if the state proceedings are not complete, as Plaintiffs maintain, the Court would abstain from exercising jurisdiction under the *Younger* doctrine. *See also Feingold v. Office of Disciplinary Counsel*, 415 Fed. Appx. 429 (3d Cir. 2011) (affirming district court's dismissal on grounds either *Rooker-Feldman* applied, or, in the alternative, *Younger* applied, where appellant had filed petition for writ of mandamus in state court).

  **B.**   ***The Federal Case Is, in Essence, an Appeal from an Adverse State Court Judgment***

  Second, Plaintiffs claim the *Rooker-Feldman* doctrine does not apply, because the instant suit is not an appeal from a state court judgment. Plaintiffs claim their injury arises out of

Defendants' refusal to satisfy the *Banks I* judgment. Because their grievance does not result from the outcome of a state court decision, Plaintiffs maintain *Rooker-Feldman* is inapplicable.

Plaintiffs rely largely on *Friends of Lake View School District v. Beebe*, 578 F.3d 753 (8th Cir. 2009). In *Friends of Lake View*, the State of Arkansas had enacted legislation, entitled Act 60, aimed at equalizing access to education pursuant to a state decision "that the . . . public education system did not meet the requirements of the Arkansas Constitution." *Id.* at 756. In a federal district court, plaintiffs sought to challenge the constitutionality of Act 60 under the Fourteenth Amendment of the United States Constitution. *Id.* at 757. The district court refused to exercise jurisdiction, invoking the *Rooker-Feldman* doctrine. *Id.* The district court believed exercising jurisdiction would conflict with a different state court decision, holding the Arkansas General Assembly had taken proper remedial action by enacting Act 60. *Id.*

The Eighth Circuit reversed. *Id.* at 758-59. First, it noted the plaintiffs in the federal case were not seeking direct review of the state court decision. *Id.* Second, the court explained, although the federal constitutionality of Act 60 was raised at the state court, the Arkansas Supreme Court had released jurisdiction of this issue without ever reaching its merits. *Id.* at 759. Thus, the court determined *Rooker-Feldman* did not apply. *Id.*

*Friends of Lake View* is inapposite, because, unlike the plaintiffs in that case, Plaintiffs, here, are reasserting the same exact claims decided by the underlying state case. In addition, while the state court in *Friends of Lake View* did not reach the merits of the plaintiff's claims, the same cannot be said of the instant case. That is, the Missouri Court of Appeals examined Plaintiff's argument that "the circuit court erroneously concluded the underlying default judgment was not a direct judgment against the City . . . or the Board." *Banks*, 410 S.W.3d at 769. The Court of Appeals held this argument was "without merit." *Id.* It conducted an analysis

of relevant case law – namely, *Brandon v. Holt*, 469 U.S. 464 (1985) – and stated it could not "conclude, based upon the Court's rationale in *Brandon*, that any legal authority exists to require the City or the Board to pay the default judgment entered solely against Officer Williams." *Id.* at 771. In sum, while disposition of the federal claim in *Friends of Lake View* would have no effect on the legitimacy of the state court decision, the same is not true here. Therefore, *Friends of Lake View* is not a sufficiently analogous case to warrant exercise of this Court's jurisdiction.

More on-point is *Dodson v. University of Arkansas for Medical Sciences*, which arose out of a divorced couple's dispute over cryogenically frozen embryos. 601 F.3d 750, 752 (8th Cir. 2010), *cert. denied*, 131 S. Ct. 902 (2011). While married, the couple had entered an In-Vitro Fertilization (IVF) Program at the University of Arkansas for Medical Sciences. *Id.* at 751-52. As part of the IVF Program, the couple entered into an agreement, which governed the custody of the embryos and dictated the couple would control their disposition. *Id.* at 752. When the couple later divorced, the state court handling the divorce proceedings issued a decree, in which the couple reaffirmed the IVF agreement, and added the wife "shall have the right to choose from available options, if any, for disposition as listed in the [IVF agreement]." *Id.*

Post-divorce, the wife sought to have the embryos implanted in her, but the husband refused consent. The wife brought a state suit, and the court subsequently found, under terms of the IVF agreement, the couple relinquished control of the embryos to the IVF Program Director upon dissolution of their marriage. *Id.* In a second state suit, the wife sued University officials, seeking a declaration that she had control over the embryos, and the University had an obligation to implant them in her. *Id.* at 753. The court dismissed the case, finding the University had sovereign immunity. *Id.* Finally, the wife brought a § 1983 suit in federal court, alleging University officials violated her rights under the United States Constitution. *Id.* at 753-54. The

district court dismissed the case for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine, and the wife appealed. *Id.* at 754.

On appeal, the Eighth Circuit affirmed the district court's dismissal. *Id.* at 756. The Eighth Circuit explained the first state court undisputedly found, "Under the terms of the [IVF agreement], upon the dissolution of the marriage by court order, all control and direction of the tissues as of [the dissolution of the marriage], was relinquished to the [IVF Program Director]." *Id.* at 755. The court held "[a]ny ruling in the case at bar in [the wife's] favor, i.e., that the federal constitution demands the return of the embryos to [her], would wholly undermine this part of the [first state court ruling]." *Id.* Likewise, in the second state suit, the court "determined the IVF Program Director had the right to dispose of the embryos." *Id.* Deciding the wife's claim at the federal level would have required federal review of that same issue. *Id.*

In light of *Dodson*, the Court is not persuaded by Plaintiffs' argument that, because their grievance does not arise from the outcome of a state court proceeding, the *Rooker-Feldman* doctrine is inapplicable. The wife in *Dodson* did not claim the outcome of the state court decisions caused her harm. Nonetheless, the Eighth Circuit held *Rooker-Feldman* applied, because deciding her federal claim would put the legitimacy of the state decisions in jeopardy. Similarly, here, determining Plaintiffs' federal case would cause this Court to examine matters already adjudicated by the Missouri Court of Appeals. In other words, the *Rooker-Feldman* doctrine applies, because Plaintiffs' instant allegations are "inextricably intertwined" with the state court proceedings; "the federal claim [would] succeed[] only to the extent that the state court wrongly decided the issue before it." *See Lemonds*, 222 F.3d at 492-93. Accordingly, the Court is not persuaded by Plaintiffs' second argument against application of the *Rooker-Feldman* doctrine.

### C. The *Rooker-Feldman* Doctrine Reached the Merits of Plaintiffs' Federal Claims

Finally, Plaintiffs contend the *Rooker-Feldman* doctrine does not apply, because the Court of Appeals did not reach the merits of their claim. Specifically, Plaintiffs claim the Court of Appeals rested its decision solely on procedural grounds – namely, the circuit court's failure to issue a preliminary writ instead of a summons – and any discussion of the merits was merely *obiter dictum*. Additionally, Plaintiffs maintain the denial of a writ of mandamus cannot serve as a basis for applying *Rooker-Feldman*, because mandamus is awarded at the court's discretion.

#### 1. The Court of Appeals Did Not Rest on Procedural Grounds, and Even If It Did, *Obiter Dictum* Can Serve as the Basis for *Rooker-Feldman*

As an initial matter, the Court finds the Court of Appeals clearly went beyond the circuit court's procedural error and discussed the merits of Plaintiffs' federal claim. Admittedly, the Court of Appeals noted the circuit court's procedural error at the outset of the *Banks II* opinion. *Banks*, 410 S.W.3d at 768. However, aside from the two paragraphs devoted to that issue, the remainder of the opinion largely discusses whether Plaintiffs were entitled to relief on the merits of their petition. *Id.* at 769-71. The Court of Appeals discussed at length *Brandon v. Holt*, which held a public official named in official capacity is liable upon the entity he or she represents, provided the entity received notice and an opportunity to respond. 469 U.S. 464, 471-72 (1985); *see also Banks*, 410 S.W.3d at 770. However, the Court of Appeals distinguished *Brandon* on its facts, and denied Plaintiffs' request for mandamus relief. *Banks*, 410 S.W.3d at 770-71. In fact, the Court of Appeals plainly indicated it was examining the merits of this case when it cited a portion of *United States Department of Veterans Affairs v. Boresi*:

> Writs are extraordinary remedies, and their procedures differ from normal civil actions. . . . The practice of issuing a summons rather than a preliminary order fails to acknowledge the nature of the remedy. Additionally, it requires a response from the respondent without regard to the merits of the petition.

> Nevertheless, this Court is exercising its discretion to consider the matter *on the merits* and issue the writ because the parties, who already have litigated the matter fully, were not at fault and should not be required to initiate a new writ proceeding due to the circuit court's failure to follow the procedure proscribed by the rules.

396 S.W.3d 356, 359 n.1 (Mo. 2013) (en banc) (emphasis added); *Banks*, 410 S.W.3d at 768 n.3.

Even if Plaintiffs correctly argue the Court of Appeals merely offered *obiter dictum*, *Rooker-Feldman* would still apply. In *Dodson*, *supra* Section II.B, the Eighth Circuit acknowledged the second state decision – which found the IVF Program Director had the right to dispose of the embryos – was unnecessary to the dispositive issue of sovereign immunity. 601 F.3d at 755. The Eighth Circuit explained, however,

> Even if that determination were technically *obiter dictum*, it was not a stray remark on an issue not presented to it. This is not a case in which the state court simply held it lacked jurisdiction and dismissed the plaintiff's case without prejudice. Rather, the state court discussed the merits of [the wife's] case extensively and dismissed [the second suit] with prejudice.

*Id.* (internal citations omitted). Likewise, here, the Court of Appeals did not make a "stray remark" when, after a thorough discussion of the merits, it held, "[T]his court cannot conclude, based upon the Court's rationale in *Brandon*, that any legal authority exists to require the City or the Board to pay the default judgment entered solely against Officer Williams." *Banks*, 410 S.W.3d at 771.

### 2. The Denial of a Writ of Mandamus Is Sufficient to Warrant Application of *Rooker-Feldman*

Under the *Rooker-Feldman* doctrine, "federal plaintiffs cannot be said to have had a reasonable opportunity to raise their federal claims in state court where the state court declines to address those claims and rests its holding solely on state law." *Simes*, 354 F.3d at 829. Citing *Biddulph v. Mortham*, 89 F.3d 1491 (11th Cir. 1996), an Eleventh Circuit case, Plaintiffs argue the denial of a writ of mandamus cannot serve as the basis for applying *Rooker-Feldman*,

because mandamus is awarded at a court's discretion, and fails to afford a reasonable opportunity to raise federal claims. In *Biddulph*, the Eleventh Circuit devoted one footnote to its discussion of the *Rooker-Feldman* doctrine. *Id.* at 1495 n.1. In relevant part, it stated,

> Because the Florida Supreme Court has strictly limited authority to grant a writ of mandamus to those cases where there is a clear right to performance of an indisputable legal duty,[8] the state mandamus proceeding did not afford Biddulph the kind of 'reasonable opportunity' to raise his federal claim that would preclude our independent review of that claim. The Florida Supreme Court's refusal to grant a writ of mandamus means only that the state court failed to find it clear and indisputable . . . that [Biddulph was entitled to a writ of mandamus].

*Id.*

Although *Biddulph* appears persuasive at first glance, the Court ultimately concludes it does not apply for several reasons. First, other courts have applied *Rooker-Feldman* where the underlying state proceedings resulted in denial of mandamus relief. *See Reed v. Swilley*, 266 Fed. Appx. 336, 337 (5th Cir. 2008) ("Because Reed essentially sought federal district court review of the Mississippi[9] state court's denial of his petition for writ of mandamus, the district court did not err in dismissing the complaint for lack of jurisdiction under the *Rooker/Feldman* doctrine."); *Brackman v. Ind.*,[10] 93 Fed. Appx. 989, 992 (7th Cir. 2004) ("Brackman petitioned for and was denied a writ of mandamus by the state supreme court to compel the circuit court to act on his filings. He may not now challenge or seek damages under 42 U.S.C. § 1983 or related statutes on account of the supreme court's refusal to compel the circuit court to act; his only

---

[8] Likewise, in Missouri, "[a] litigant seeking mandamus must allege and prove a clear, unequivocal, specific right to a thing claimed." *State ex rel. Kizer v. Mennemeyer*, __ S.W.3d __, 2014 WL 707150, at *1 (Mo. App. E.D. 2014).
[9] As in Missouri, in Mississippi, mandamus relief requires "a clear right in the petitioner to the relief sought." *Aldridge v. West*, 929 So.2d 298, 302 (Miss. 2006) (internal quotations omitted).
[10] Like Missouri, in Indiana, "[m]andamus does not lie unless the petitioner has a clear and unquestioned right to relief and the respondent has failed to perform a clear, absolute, and imperative duty imposed by law." *State ex rel. Steinke v. Coriden*, 831 N.E.2d 751, 757 (Ind. Ct. App. 2009) (internal quotations omitted).

remedy was to seek certiorari under 28 U.S.C. § 1257."[11]); *Ward v. Plymale*, No. 3:12-6186, 2013 WL 3776609, at *3 (S.D. W. Va. July 17, 2013) ("If Ward seeks to have this district court review the West Virginia[12] Supreme Court of Appeal's denial of his mandamus request, the *Rooker-Feldman* doctrine precludes such review."); *Cherry v. Record Transcript, Inc.*, No. 8:07-CV-565-T-30MAP, 2008 WL 1777745, at *3 (M.D. Fla. Apr. 18, 2008) ("Moreover, to the extent that Plaintiff is challenging in this Court the Second District's denial of his petition for writ of mandamus, . . . the *Rooker-Feldman* doctrine deprives this Court of subject matter jurisdiction."); *Oblander v. Hamilton*, 90 F. Supp. 2d 1216, 1221 (D. Kan. 2000) ("Having lost in state district court, and unable to obtain the relief sought from the Kansas[13] Supreme Court in his petition for mandamus, Oblander has turned to the federal district court in the hope of a more expedient and favorable ruling. This he cannot do.").

Even if *Biddulph* were conclusively alive and well today, the Court would not apply it here, because it is distinguishable on its facts. Unlike the appellant in *Biddulph*, Plaintiffs had a reasonable opportunity to raise their federal claim during the state proceedings, which they fully

---

[11] Under 28 U.S.C. § 1257,

> [f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

[12] In West Virginia, mandamus will not issue "unless three elements coexist – (1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." *Veltri v. Parker*, 750 S.E.2d 116, 121 (W. Va. 2013) (internal quotations omitted).

[13] Kansas similarly requires a "clear legal right" before mandamus will lie. *Bd. of County Comm'rs of County of Harvey v. Whiteman*, 933 P.2d 771, 774 (Kan. Ct. App. 1997) (internal quotations omitted).

litigated before both the circuit court and the Missouri Court of Appeals, Eastern District. Moreover, the Court of Appeals did not simply hold Plaintiffs failed to show a "clear right" warranting mandamus; rather, it stated it could not conclude "that *any* legal authority exists to require the City or the Board to pay the default judgment entered solely against Officer Williams." *Banks*, 410 S.W.3d at 771 (emphasis added). Even if this finding was *obiter dictum*, it is sufficient for implementation of *Rooker-Feldman*, because it was not a mere "stray remark" regarding an unpresented issue. *Dodson*, 601 F.3d at 755.

In sum, the Court concludes exercising jurisdiction in this case would jeopardize the legitimacy of the underlying state court proceedings. Proper consideration of federalism principles form the basis of applying *Rooker-Feldman* doctrine in this instant suit, *Lemonds*, 222 F.3d at 495, and the Court therefore dismisses this case with prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Slay, Green, and Jones' Motion to Dismiss [ECF No. 13] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants[ Slay, Gray, Irwin, Battle-Turner, and Switzer's] Motion to Dismiss [ECF No. 18] is **GRANTED.**

**IT IS FURTHER ORDERED** that all claims against Defendants Francis Slay, Darlene Green, Tishaura Jones, Richard Gray, Thomas Irwin, Bettye Battle-Turner, and Erwin Switzer shall be **DISMISSED WITH PREJUDICE.**

Dated this 25th Day of March, 2014.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE